UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

In re : Chapter 7
 : Case No. 09-12512 (SHL)
WATERFORD WEDGWOOD USA, INC., : (Jointly Administered)
*et al*. :
 : Case Nos. 09-12513, 09-12559, 09-
 Debtors. : 12562, 09-12570, 09-12574, 09-12577,
 : 09-12598, 09-12602, 09-12611, 09-
------------------------------------x 12614, 09-12618 and 09-12619

JOHN S. PEREIRA, as Chapter 7 Trustee for :
WATERFORD WEDGWOOD USA, INC., :
 :
 Plaintiff, : Adv. Proc. No. 10-_____ (SHL)
 :
 v. :
 :
CORPORATE PARTNERS II LIMITED and CP II :
WW COINVESTORS LLC, :
 :
 Defendants. :
------------------------------------x

## COMPLAINT

John S. Pereira as Chapter 7 Trustee (the "Trustee") of debtor Waterford Wedgwood USA, Inc. ("Waterford"), by and through his attorneys, alleges as the Trustee's Complaint against defendants CORPORATE PARTNERS II LIMITED ("CP") and CP II WW COINVESTORS, LLC ("Coinvestors", and together with CP sometimes referred to herein as the "Defendants") as follows:

## NATURE OF THE ACTION

1. This is an adversary proceeding commenced pursuant to Sections 544, 547, 548, 550 and 551 of the Bankruptcy Code, to recover as fraudulent transfers or preferences certain payments made by Waterford to the Defendants.

1428926v1

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is founded upon 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).

3. This adversary proceeding is a core proceeding pursuant to Sections 157(a) and 157(b) of Title 28 of the United States Code because this adversary proceeding arises in or under the Chapter 7 case of the Debtors, now pending in the United States Bankruptcy Court for the Southern District of New York.

4. Venue of this proceeding in this Court is proper pursuant to § 1409(a) of Title 28 of the United States Code because this adversary proceeding is one arising in or under a case under the Bankruptcy Code pending in this District.

## PARTIES

5. Waterford is a corporation organized and existing under the laws of the State of Delaware, which maintained its principal place of business at 1330 Campus Parkway, Neptune, New Jersey 07719.

6. Waterford filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code with this Court on April 23, 2009.

7. The Trustee is the duly appointed Chapter 7 Trustee for Waterford's bankruptcy estate, with offices located at 150 E. 58th Street, 14th Floor, New York, New York 10155.

8. CP is a company organized and existing under the laws of the Cayman Islands, with its principal place of business located at 30 Rockefeller Plaza, New York, New York 10020.

9. CP is a private equity fund that is in the business of making significant minority-stake investments in established public and private companies.

10. Coinvestors is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 30 Rockefeller Plaza, New York, New York 10020.

11. As will be more fully alleged below, Coinvestors participated with CP in the purchase of preferred stock issued by Waterford's ultimate parent which gave rise to the claims asserted in this adversary proceeding.

**FACTUAL ALLEGATIONS**

12. Waterford is a corporate entity wholly owned, through intervening subsidiaries and affiliates, by an Irish parent company, Waterford Wedgwood PLC ("PLC"). Waterford, PLC, and their other foreign and domestic affiliates (the "Group"), conducted a global business which manufactured and sold high quality consumer goods under brand names including Waterford Crystal, Wedgwood China, and Royal Doulton China. Waterford's role in the Group's business included the importation and distribution of the Group's products within the United States.

13. During 2007, the Group was heavily burdened by debt and operating at a significant loss. To raise additional capital, PLC undertook to issue 200 million euros (€200 million) of new preferred stock.

14. In connection with PLC's efforts to issue the new preferred stock, PLC entered into a Share Subscription Agreement (the "Subscription Agreement"), dated December 28, 2007, between and among itself, Waterford, CP, Coinvestors and Corporate Partners, LLC (an entity related to CP and Coinvestors).

15. Under Clause 2.1 of the Subscription Agreement, CP and Coinvestors subscribed to purchase 5 million shares of the new PLC preferred stock, at a price of ten euros (€10) per

3

share, for a total consideration of 50 million euros (€50 million). Of the new shares, 4,996,066 were allocated to CP, and 3,934 were allocated to Coinvestors.

16. Although Waterford was a party to the Subscription Agreement, it neither issued any stock nor received any of the proceeds of the issuance of the new preferred shares, which proceeds were paid to PLC upon the completion of the placement of those shares with CP and Coinvestors.

17. Although Waterford received no benefit from the Subscription Agreement, Waterford undertook in Clause 5.1 of the Subscription Agreement to make certain periodic payments, characterized as "commissions" to CP and Coinvestors, in the total amount of 5 million euros (€5 million).

18. These "commissions," according to the Subscription Agreement "shall be a commission for the subscriptions by [CP and Coinvestors] for its shares in [PLC] and not, for the avoidance of doubt, a commission for procuring the subscription of any Third Party Investors." The "commissions" were to be paid quarterly, in advance over a period of five (5) years, commencing on the completion of the purchase of the new PLC preferred stock by CP and Coinvestors.

19. The Subscription Agreement further provided, in Clause 4.2(b), that CP and Coinvestors would be entitled to appoint two members of PLC's board of directors after their purchase of the new preferred stock was completed. Pursuant to this clause, Ali E. Wamboldy and Jonathan H. Kagan, both managing principals of CP, were in fact added to the board of PLC and continued to serve as board members at the times of the Preferential Payments (as defined in Paragraph 30 below).

20. Subsequent to the completion of the purchase of the new PLC preferred stock by CP and Coinvestors, Waterford made the following "commission" payments (the "Payments") on the dates and in the amounts set forth below:

| Payment Date | Paid to CP | Paid to Coinvestors | Total |
|---|---|---|---|
| 12/31/2007 | $367,925.99 | $299.01 | $368,225.00 |
| 3/27/2008 | $394,053.46 | $321.54 | $394,375.00 |
| 6/26/2008 | $393,185.70 | $314.30 | $393,500.00 |
| 9/29/2008 | $359,762.49 | $287.51 | $360,050.00 |
| | | | |
| Total: | $1,514,927.64 | $1,222.36 | $1,516,150.00 |

21. At the times of the execution of the Subscription Agreement and each of the Payments set forth above, Waterford was liable, either as a direct borrower or guarantor, on over $400 million of secured bank and bond debt incurred by itself, PLC, and other members of the Group, and the assets of Waterford, PLC, and the Group were insufficient to repay the debt, as evidenced by the fact that less than half this amount was received when the Group's assets were liquidated for the benefit of the Group's secured bank lenders in early 2009.

## FIRST CLAIM FOR RELIEF
## FRAUDULENT TRANSFERS UNDER THE BANKRUPTCY CODE

22. The Trustee repeats and realleges the allegations as set forth in Paragraphs 1 through 21 of this Complaint.

23. At the time of the Waterford's execution of the Subscription Agreement and at the times of each of the Payments, Waterford was "insolvent" within the meaning of Section 548(a)(1)(B)(ii) of the Bankruptcy Code, or, alternatively, was rendered to be insolvent by the incurrence of the obligation contained in the Subscription Agreement and the Payments, or, alternatively, was engaged in business for which its property was an unreasonably small capital.

5

24. Waterford received no equivalent value, or less than equivalent value, for the Payments. Although the Subscription Agreement characterizes these payments as "commissions", they are in fact guaranteed, periodic returns on the equity investment made by CP and Coinvestors in PLC, for which neither PLC nor Waterford received any equivalent values.

25. Alternatively, to the extent the Payments were for commissions incurred at the time of the execution of the Subscription Agreement, Waterford received no equivalent value for incurring the obligation to pay the commissions, because Waterford neither issued securities pursuant to the Subscription Agreement nor received the consideration paid to PLC for the sale of the new preferred stock to CP and Coinvestors.

26. The Payments were made within two (2) years before the date of filing of Waterford's bankruptcy petition.

27. Accordingly, the Payments constituted fraudulent transfers under Section 548(a)(1)(B) of the Bankruptcy Code, and the Trustee is entitled to recover the Payments for the benefit of Waterford's estate.

**SECOND CLAIM FOR RELIEF**
**TO RECOVER PREFERENCES UNDER THE BANKRUPTCY CODE**

28. The Trustee repeats and realleges the allegations as set forth in Paragraphs 1 through 21 of this Complaint.

29. By virtue of their appointment of two directors to the board of Waterford's ultimate parent, PLC, Defendants are "insiders" of Waterford.

30. The Payments made to Defendants on June 26, 2008 and September 29, 2008, as alleged in paragraph 20 above (the "Preferential Payments") were Payments on account of

antecedent debt created by the Subscription Agreement, made while Waterford was insolvent, between ninety (90) days and one (1) year before the filing of Waterford's petition.

31. The Preferential Payments enabled the Defendants to receive more than they would receive in this case under Chapter 7, had the Preferential Payments not been made. Substantially all of the Waterford assets were sold prior to bankruptcy to satisfy its secured bank lenders, and its remaining assets are insufficient to satisfy the claims of unsecured creditors even if the Trustee is successful in this litigation, and other litigation he has brought, or may bring, to recover additional amounts for the benefit of Waterford's estate.

32. Accordingly, the Preferential Payments constituted preferences under Section 547(b) of the Bankruptcy Code, and the Trustee is entitled to recover the Preferential Payments for the benefit of Waterford's estate.

**WHEREFORE,** the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against the Defendants as follows:

(a) on the Trustee's First Claim for Relief, against defendant CP in the amount of $1,514,927.64 and against defendant Coinvestors in the amount of $1,222.36, or in such other amount or amounts that may be proved at trial, together with prejudgment interest; and

(b) on the Trustee's Second Claim for Relief, against defendant CP in the amount of $752,948.19 and against defendant Coinvestors in the amount of $601.81, or in or in such other amount or amounts that may be proved at trial, together with prejudgment interest;

1428926v1

(c) together with the costs and disbursements of this action, and such other, further and different relief as the Court deems just, proper and equitable.

Dated: New York, New York  
       November 22, 2010

TROUTMAN SANDERS LLP

By: s/ John P. Campo
    John P. Campo
    John S. Kinzey
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 704-6000

*Attorneys for John S. Pereira, Chapter 7 Trustee for Waterford Wedgwood USA, Inc.*